All right, we will hear an argument in the United States v. Hines. May it please the Court. It's been 12 years since the Rita and Gull decisions. It's been 10 years since the Carter decision. It's been 9 years since the Lynn decision. From then until now, this Court's cases have talked about a very simple, straightforward rule, the obligation on the District Court at a sentencing hearing. And that is, if a party has to address it, that... I think if I were to look at your case, at least from my perspective, I see this case as being either it's blue or not. And if you would articulate how does it fit within the blue case or not, how is it distinguished? It seems to me that kind of settles this case. I think it does, Your Honor. And that was, I was going to say that under the very clear rule that this Circuit has articulated, I think very clearly the Court did not proceed in a procedurally reasonable way. You probably would agree blue is rather expansive. It is expansive. And it's important in this case, taking this case specifically, where the District Court framed the sentencing issue. So you look at the... To me, if you would just put the factors right beside each other and compare it with blue with the factors, and then you say, well, what's the argument on the other side? The argument says, well, history and characteristics encompass this. Did blue do that too? I mean, that's really the question it comes down to. And I think if you would approach this case in that way, it will be helpful to me to understand how is blue distinguishable from this case? I don't think it fundamentally is distinguishable. And I got the conclusion. Right. What I'm trying to do is get some specifics. Right. Well, blue talked about addressing each argument that the party made. Blue does acknowledge that in some cases, the context can make it patently obvious, that's the word, those are the words that Judge Gregory used, that the court considered the arguments. But in this case, the way this case is similar to blue, very similar to blue, is the District Court frames the issue. Your client is a recidivist and a 60-month sentence is not sufficient to account for his criminal record. He adjourns the hearing, and when it reconvened, defense counsel, counsel for Mr. Hines, focused and directed her argument at that issue. Is Hines a recidivist? And the arguments that she made... I'm sorry. Can you say... I'm sorry. I'm just making sure I'm understanding. I'm sorry. The focus of the variance argument, what you just said is the focus was on whether he's a sort of irredeemable recidivist. I mean, he was a recidivist at some sense, right? I misspoke. No, no, you're not misspeaking. I just want to make sure I'm understanding you. But the focus of the argument for a variance or for a lack of an upward variance, however you want to describe it, was that he was not an irredeemable recidivist. And she gives a number of facts to support that, but that's the core of the argument. There's also this overrepresentation point. But really, it comes down to... I mean, that was the main thrust of her argument. That's what you're saying. And you said it much better than I can. She was saying that, Your Honor, you're looking at the fact that he's back here again and saying he's going to keep doing this. He hasn't learned anything. He hasn't tried to turn his life around. He's simply a criminal, and he's going to always be a criminal. But my... I'm sorry. Let me ask you this. Yes. Fundamentally, I'm looking at Blue. Think about this case. What difference is it going to make? I mean, okay, if we follow Blue, and I think maybe we have to follow Blue, send it back. But Blue didn't send that case to a different judge. They sent it back for the court to articulate reasons for non-frivolous arguments, which I don't think it would be difficult for any court to do. There's some language that even Blue acknowledges. You can be a little gentle about it. It wouldn't be difficult at all to go back, simply do it, get the same sentence. Well, in this case, we're talking about a substantial upward variance. Five years is a long time. I got it. But to justify it, all you got to do is go back, and each one of those factors that you list out here, you say is not encompassed by history or characteristic as in Blue, you do the... And I don't know what the defendant in Blue ultimately got. I'm just saying from a practical standpoint, it seems to me, if the judge wanted to give that sentence, he's going to give the same sentence. Well, I think the underlying rationale for sending it back is if the court at this time considers the arguments that Mr. Hines has made. And to do that, what does it take? That's my question. What would indicate in the record that the judge has considered those arguments? Well, the judge, for example, believed that Mr. Hines was still a gang member. And defense counsel offered evidence and argument about him having gotten out of the gang, that he was... Well, but in the – I mean, the judge – so the, you know, defense counsel stands up and That's not really evidence that he's not a member of the gang, right? And at least it's certainly not evidence that the district court has to credit, right? Correct. But – and that's correct. I would argue there's some evidence he was shot three times. That's in the pre-sentence report. So the evidence that he was shot three times is – but we – there's no evidence in the record as to why he was shot. Was it part of a gang warfare, or was it by his own gang members? We don't know that. I mean, I get that you represent one way or the other. Right. But the district court doesn't have to accept, right, that, you know, the fact that he was shot three times is evidence that he's turned his life around. He might say he was shot three times, and that suggests to me that he's still in the middle of things where people get shot. Correct. But I would also – his claim that he was shot because he left the gang, I think that's also consistent with – so in other words, this is something that the court... Irredeemable or not, I mean, that's the sort of – that's the challenge. I mean, it seems to me the district court here is saying, listen, I get these facts, right? You're saying these facts, right? But in his opinion, as I read the district court judge, he's saying that doesn't change the conclusion that he's an irredeemable recidivist, right? And I know that – and he gives reasons why he believes he's an irredeemable recidivist. And it may well be that he's gotten his card to work at the docks. It may well be that, you know, he's engaged with his family. But – and it may well be that, like, there's not affirmative evidence that he's carrying guns around, although there's some question about that too. But what we do know is these facts, and he ultimately says, I think based on these facts, he's an irredeemable recidivist. Right. And that's considering – and that is evidence that he's considered the argument that defense counsel made that he's not an irredeemable recidivist. But the problem, I think, Judge Richardson, is what the court said at the last – third sentencing hearing. You know, there were three. But we take them all together, right? We don't have to carve out, like – because the judge explained originally what he was thinking, what his rationale was, we don't have to in light of – Correct. I think you shouldn't ignore it because he said essentially exactly the same thing after defense counsel had presented her argument at the third hearing. It was exactly the same rationale and the same – not addressing at all the points that Mr. Hines had made about why he wasn't irredeemable, how he had made some progress. I mean, it wasn't – How did those facts go to the issue? I mean, the blue, right, there were separate issues that were raised, six of them, I think. Maybe there were eight, two were addressed, six were not. Judge Wynn will correct me if I'm wrong about the numbers. But there were six separate issues – There were two addressed. That weren't addressed at all, right? Right. Here, the story really came down, as you agreed in the beginning, it came down to whether he was an irredeemable recidivist. And there were facts on both sides, right? He gets a doc card on the one side, on the other side, he can't comply with supervised release, right? On the one hand, you know, he does these good family things. On the other hand, you know, he's selling, you know, significant quantities of heroin and crack, right? So we've got competing facts over a single narrative. Is he an irredeemable recidivist? And the court concludes and explains that he finds him to be an irredeemable recidivist. But the court's reason was because he got a lenient sentence back in 2012. It didn't account for – Not just that, but also that while on supervised release, he's committing these crimes. Okay, 2014. This is 2018 that he's being sentenced, and what he's trying to say is, I have done some things. You know, he's the first to admit, I'm not perfect, I'm not doing well at this, but I have made some progress, Your Honor, to show you that I am trying to turn my life around. And the judge says nothing about it. Well, what he says is, I gave you – I gave you leniency. I've heard this story before. I gave you a lenient sentence, and what did you do? You came back and you did it again. So don't be telling me this story anymore. Well, but it wasn't – if you compare the revocation hearing transcript with the sentencing transcript, Mr. Hines actually had done some things in the interim. He had gotten his long shorman's card, and I think counsel made an excellent point at the sentencing hearing. Somebody in Mr. Hines' circumstances doesn't go around spending $140 three times if he's not serious about wanting to work at an honest job. I mean, that was different from his situation in 2014 at the revocation hearing. I understand the argument, but my point is, is that the record to me, when you consider the – I mean, how much this judge knows about this particular defendant, the revocation hearing, the three separate sentencing hearings, that he showed that he addressed the argument, maybe not every fact supporting the argument, but the argument that he was not an irredeemable recidivist, right? Because he said in the first hearing, I'm going to depart up because I find you to be an irredeemable recidivist. They come back and say, no, no, no, no. Like, I got this recidivist, even though, you know, I'm getting shot and I got drugs and all these other things. And the judge says, no, no, no, no. You're an irredeemable recidivist, and here's how I know. Because of what happened four years ago, six years ago. Yeah. And I'm not even going to talk about, you know, the positive things you've done since that. The self-serving statements to the country. Right. Or I would prefer to call it mitigating. Self-serving mitigating statements to the country. Which is, well, but, you know, the pre-sentence report does indicate that he had gotten his, for example, his longshoreman's card. All right? So, I mean, these aren't self-serving made-up statements. This is true. He's done this stuff. What is this? I mean, I come back to Judge Wynn's question. What is this all going to accomplish? Okay, so we're talking about whether it's... Sending it back. You know, the judge's knowledge of the individual's history is the same, and all he has to do is just... I mean, it almost, in a way, it makes the judicial process just seem a matter of sort of churning and ping-ponging back and forth without making any difference. And, I mean, I just, I don't know whether we, I wonder whether we're just jumping through hoops here. Well, and respectfully, Judge Wilkinson, I don't agree that it's pointless. I think, again, we're talking about a substantial upward departure if Judge Boyle engages with Mr. Hines. On remand, he would say, well, there's a substantial upward departure because I've given you a break in the past, and you didn't take a lesson from it, and here you are back here again, and I've extended a hand of leniency in a downward departure, and you slapped me. I didn't expect to see you back here again engaged in the same kind of offenses, but here you are. And, you know, I just don't know, in this particular case, and all of the points you just have to sort of put down on the record, I mean. But it's not for this court to do that for the district court. I mean, we don't, you said it, Judge Wilkinson, we don't know what that judge is going to do. Well, Judge Wilkinson makes a good point, and I was kind of in that camp, and I looked at my notes and noted that in the Blue case, the sentence was actually at the lower end of guidelines of 272 months. When it went back, it gave him 228 or something like that. Right. And that matters. This is a high end on it, and while I think Judge Richardson is making a good point that this judge has seen this defendant over and over again, he actually gave him some pretty good breaks. He kept telling him, you know, you keep coming back in. He was lying to him. I mean, that's just no other way to put it. Judge Ball is frustrated with this thing, and I know Judge Ball, a lot of things you can say about him, but I think he's one of the judges that's more reasonable in sentencing considered by the defense bar there. And so when I'm looking at this, I'm thinking Judge Ball, and he's dealing with this frustration. I think the problem is that Blue forecloses that. I think Blue pretty much, that's exactly what happened there. That judge looked at this case, looked at the history of it, the characteristics of the defendant, and came to that conclusion. The court says, no, there's six arguments here that you didn't give the explanation to. And then Blue, the court could have given the same. He could have come back and articulated the reason on six, but he gave something different. Here we got a situation, you know, it just seems intuitive. This is what's going to happen in this case, given the history of this fellow. But from a legal perspective, my perspective is Blue is a pretty hard case to overcome on this, unless we find a way to, we can't overrule it, we got to follow it. But to try to distinguish it is going to take a little length, a little help. I mean, you're going to have to really go out a little bit and figure out how to distinguish Blue on this, and if you do, you're carving out an exception that just doesn't exist. My time has expired. I could either respond now or perhaps on... I guess I didn't have a question. That's fine. Thank you, sir. Okay, thank you. Ms. Parker. Good morning, Your Honors. May it please the court. I was encouraged listening to the colloquy back and forth, because I think this case is not as straightforward as it may seem in the sense that the district court did know this defendant, knew him intimately. This was the third time that he was coming before the court. The court had warned him several times before. The court had framed the issue and said, I'm interested in recidivism. All of the parties knew that when they came back for sentencing, that that's what they needed to address. What they said to the district court were arguments that the court... That's a lot of criminal cases when you deal with it. When you've got a limited number of judges, particularly in areas where you may have one judge there, you're going to see those defendants probably come back. Recidivism is just a way of life. And if we add that in as an exception to Blue, well, this judge has seen him before. He's dealt with him. He's frustrated with him. He gave him chance. The judge does have that history in his head. I'm not taking that away. I think he clearly can use that as a basis. The problem here is Blue makes it very clear. It's an affirmative duty. Okay, you got all that, but here are this list of factors. And here they've listed seven. Blue had eight, two of them he actually did here. And there's no question he did not address some of those seven factors in there. And yet the same explanation, whether it is I knew him before and I've given him chances personally or I knew his history and his characteristics, that's exactly what was in Blue. And it makes it very difficult to articulate a difference between this case and Blue. And we are not in the business of overruling cases, even though I think it's probably a strong sentiment to say Blue has, in my opinion, probably gone a bit far in terms of what it requires, but it's the law. And we respect the law in this circuit. We do, and I do as well. The problem is that the court not only had seen him before, but had given him breaks before. And the bigger problem that the defendant has is that he had made those exact same arguments to the court before. He didn't come with anything new. In 2014, at the revocation hearing. So then evidence that you could introduce, he made them before, and on the before times, the judge did address the non-frivolous arguments, and you're saying, baby, you're incorporating the previous times? I'm not sure that follows, you know, the Blue spirit. Blue is saying, even if you said, well, you say, well, I don't know if you get away with it. I don't know if it's sufficient, but it seems like to me it might be enough to say, I got this argument that you're making here on this point here. You made that argument before. I rejected it for that reason, and I'm doing so again now. What I'm saying, Your Honor, is when a conversation gets repeated, the brevity of what's said the last time is expected. I share the frustration of the trial judge. I'm with you on that, but I'm dealing with Blue because that is very much what happened in Blue. I mean, all those arguments, the government made every one of those arguments right down on Blue, and the court looked at it and says, no, you've got to address these non-frivolous arguments. You have to address the non-frivolous arguments depending on the strength of the argument. There are some arguments, if the record before the court makes those arguments not have any strength or potency, then there's very little that a judge could say. The Blue court, those are pretty weak. I don't know what the strength is. Influenced by older brothers, committed offense to support his addiction, found employment, good father. I don't know what the strength of those have to do any different than left the game, didn't carry a gun, started taking GED cases, court class. It looks the same to me in terms of the strength. Well, was it the same in terms of the record before the court? And I'm simply just dealing with Blue. I mean, I'm in the world of Blue. I'm not in the world of if you were arguing to me in the first instance and I was just giving my thoughts on it, I might go your direction, but I'm arguing in Blue's world right now, and that is very important to us that when we have a precedent from this court of a panel, this is a unanimous panel, and it comes to us, we can't just dodge those decisions because if we do it in this case, we can do it in other cases, and that's not comfortable. That doesn't make life good. There's a procedure in which we can do that, but this is not it for one panel to do that, to second guess the other panel and then try to find little small things like he knew him before. He's heard this before. He's given him a chance before, which is the same as history and characteristics. That's all it is. Quality arguments may help. Don't you agree? That's not a fair question, is it? I may have lost. I may have lost. No, no, just go ahead and concede you lose. That's what it is. These words are just concede you lose. I don't think that I have to today. While the arguments may still have the same name, so it's getting a job. It's, for example, staying away from being in a gang. What makes a case specific is what are the facts and circumstances of that specific case, and here what you have is a defendant who tells the court repeatedly that he stayed away from the gangs. In fact, in 2014, he told the court the same thing. I'm no longer associated with the gang. But he could have from 2014 to this. He could have actually left the gang. Not if he got shot, according to his representation, in 2016 because of the gang. Not if he got shot, and that's exactly what happened here. In 2016, he told the court that he got shot because of the gang. So how could that be satisfied at least so that you wouldn't be standing here? What would the judge have said knowing what you just said? What more could he have said? Well, what the judge did say at the first sentencing hearing, the judge said, you are still in the lifestyle. You haven't left the gang. You're still in the lifestyle. That was part of this hearing. When was that? Where are you on that? Page 98, I believe. I'm sorry, page 38. So that's the earlier hearing. This is the earlier hearing of this case. At the very bottom of that, the defendant tells the court that he, in fact, he started off by telling the court that he had removed himself from the gang and he was no longer associated. And the court at the very bottom, line 24, says, you got shot in the meantime. You're still in the lifestyle. The defendant says, I'm not in the lifestyle. The court says, of course you are. What about the taking of GED classes? Well, he told the court that in 2014, that he was taking the GED classes. What did he say at this hearing, though? I understand there's some previous hearings. The court did not respond. We don't incorporate what he said previously down to justice footed. I don't think that's permitted. That doesn't sound like it would be permitted. The court did not respond specifically to the GED comment. It didn't respond at all to it. But it doesn't mean that the court didn't hear and consider it. What he does say is that, listen, I gave you all these breaks before based on what you told me. And one of the things that we know that he told him is that he was getting his GED. And so I agree. He didn't use the exact words, but he makes reference by implication at least, and we know from Blue that we can look at implications as to whether arguments are addressed. And the reference back to I gave you a break for the reasons you gave me before, he didn't articulate those. That addresses the fact that, hey, I gave you all these breaks based on what you told me. Like the story is the same now, but you just keep committing crime. Yes, Your Honor. And in addition to that, he didn't get his GED. And so he was standing before the court in 2018 saying, oh, I was going to get it, and I started to take classes again, but in the meantime I got shot. So the court, what does the court say to that? What the court did say is that I've given you an opportunity to change your life. I've given you an opportunity to show that you are going to be different, that you understand that you need to withdraw from this lifestyle, and you have not. And when the issue has been framed to be recidivism, and the defendant comes before the court a third time, and for everything that he said he was going to do, he hadn't quite accomplished it, with the exception of finally having obtained the work card. But even in that situation, he got the work card, but he's selling in 2017, he's selling undercover large amounts of heroin and crack cocaine, receiving upwards of $600 at a time. So employment is not what's on his mind. There were four instances in very short proximity to each other in which he was selling large amounts of heroin and crack cocaine and receiving a lot of money for it. So his employment was not the first thing on the defendant's mind. He also told the court that he was taking care of his mother. His mother, he said, had been drug addicted, and he was doing this good thing of living with her and taking care of her. Well, when he was arrested in 2017 and they went to his home, they found drug paraphernalia in the home. They found crack cocaine in his room wrapped in his underwear. And what did he do? He told the police that it was his mother's crack. So Judge Wynn's point is like absolutely all that's true, but the judge didn't say any of those things. I mean, those are great arguments, and if you were at sentencing rebutting, that would get you somewhere. Can you talk just a second before your time runs out about whether you believe the error is harmless, and if so, why? If there is error. And in doing that, again, go back to Blue and note that the court there said that Blue had done this robbery, and Blue had gone back. He had done this before, and he was a career offender because of two predicate narcotic convictions for robbery with a dangerous weapon and a federal armed bank. We're talking here a non-violent type crime as opposed to what happened in Blue. Two things, and the court says he has a substantial history and serious sense of offense. I mean, we can talk about this situation in terms of a drug where there's no violence or anything involved, but you got in Blue an individual, if you want to compare individuals, who robbed a bank twice coming up for the third time on this thing. The court says you know the court got to say I've heard all this before. You can't possibly believe anybody like that has been rehabilitated by the few mitigating factors he's laying out here of good father, found employment, committed offense to support his opiate addiction, influenced by older brother, any different than the GED courses, they fixed up the home to take care of his mother, accepted responsibility, doesn't carry a gun, limited criminal history. In terms of the comparison, when the end result really comes down, does Blue apply to this case, and if it does, does it basically lead us or tell us we've got to go in this direction with this case? Ultimately, as I indicated, I think Judge Boyd would come back and probably would with the same sentence. It didn't happen in Blue, but could. But that's the essential problem I have with the case is Blue. Blue looks to be on all fours, and we can talk about, well, Judge saw him before, did it before. I haven't looked at the underlying record in Blue, but this guy had been up for two of these in this particular, I think that was a North Carolina case too, and I'd be willing to say that judge has seen him before or somebody like him. And kind of heard that same stuff. So I don't see a difference in the case here from Blue, and that's the fundamental difference I see in this case. Independently, I probably could analyze it independently, but not with Blue. Can you? Incorporate that into my question, which was can you talk a little bit about even if we assume an error under Blue, Blue doesn't foreclose harmless error analysis. Why would you argue at least that harmless error applies in this case in contrast with something like Blue? Well, this court has applied harmless error to these types of issues, and harmless error here I think would be the obvious route to go if the court were to find error because of what the district court said. The district court listened. There's no argument that the court listened to the arguments and that the court at least considered the arguments. The only thing that we are really disagreeing about is whether the court said enough in rebuttal of the arguments or certainly to say that the court had considered the arguments. I'm not sure that's the disagreement, but I'm not sure that's the agreement whether it's said enough. What we may disagree with is what's the difference in Blue? Even a harmless error could have been presented in Blue because the judge, you could say what the judge said. It was harmless. The judge looked at history, and we looked at what he did. He's done this. He's robbed banks twice, and he did a third time. If ever there was a harmless error case, Blue would have been the harmless error case, not this case. Was there a harmless error argument made in Blue? I just don't remember. I don't recall if there was a harmless error made in Blue. I can imagine why the prosecutor would have argued it, but don't need to argue it if the court didn't bring it. If the court didn't address harmless error, then Blue doesn't foreclose our addressing it is all I'm saying. Correct, and one thing that distinguishes Blue, Blue had separate issues that the court needed to address. Here we're talking about one issue, and that issue is recidivism, at least the way that the court looked at it. Here, the court said that it did not find that this defendant had changed his life after having been given opportunities to do that, and that it believed that this was the correct sentence for this defendant. The issue in this case is not recidivism. The issue in this case is whether the non-frivolous arguments were addressed by the court. That's the issue. It's the same one in Blue, and whether we want to go harmless error, if you can go harmless error, the basis of it would be the same in Blue as it would be here. Limited history, history that goes on recidivism, or history that deals with characteristics, same basis for harmless error existed there, and whether it addressed it or not, it wasn't there. But otherwise, if we implore harmless error here, we will eviscerate Blue, because every case we could come back and say the same thing under those facts of Blue. I do have an answer for your question, if you will just allow me to answer. Certainly, please. The defendant in his brief said that almost all of Hines' arguments directly address the point of recidivism. He says this on page 9. After the court had framed the issue, these arguments are not mere aspirational statements about having learned his lesson. They were specific fact-based arguments unique to him as to what he had accomplished. And he says that it was about the district court doubled the top of his guidelines range based on its belief that he would recidivate. Everyone understood that when they came back to the hearing that that's what the issue was on the table because the district court had framed the issue. Why is that important for harmless error? It's important for harmless error because the court made it clear that he believed that this defendant had not changed his life, had not done anything different, and in fact, because of that, that the court believed that sentence was appropriate. Even the defendant himself said to the court when he appeared at the hearing, I know that I haven't changed anything, I know I haven't done any much, and you probably don't think that I will. And that's exactly what the court thought. In this case, if you have some assurance that the court will impose the same sentence, and I think Your Honor has said that you believe that the court could impose the same sentence, then that's no reason to send the case back because the court can just do the same thing. If the error simply here is simply that the court did not speak to the defendant's arguments, these arguments were not strong arguments that were going to change the court's mind. The court heard them. The court had heard them before. The fact that the court had heard them before and the fact that the defendant hadn't changed his behavior is enough to give this court assurance that the district court would not be any more persuaded, if it went back, than it was when he sentenced him in the first place. Do you have anything further? Your Honor, I would just ask that you affirm the judgment of the district court in this case and not send it back. Thank you very much. Thank you. Mr. Gordon. We read the record very differently. Judge Richardson, we don't have the sentencing transcript from 2012 when he was 19 years old for the felon in possession. We don't know what he said at the hearing. Judge Boyle, what we have in the record, Judge Boyle didn't remember whether he was the judge on the case. Who did this? Why did he get this break? It's never made clear. I might argue because he was 19 years old and the offense was a gun, I think, found in the glove compartment. It was a fairly innocuous status offense, and maybe the judge didn't want to punish a 19-year-old kid that much. But we certainly don't have, and again, I think it's so important to note that he's not making the same argument when he addresses the recidivism in the context of the upper departure. He's saying, I have taken affirmative steps to show you that I'm at least trying to change and that I'm not irredeemable, I'm not irreconcilable, I think was the word the court used. And again, Ms. May Parker said that there's no dispute about whether he considered the arguments. I think that's exactly what we're disputing, that we are saying there's no evidence that he did consider the arguments, that he had his mind made up when he announced that he was going to upwardly depart and nothing the counsel said over nine pages of the third hearing registered the court. And so again, I don't think that if the harmless error test is going to be that on remand the court could impose the same sentence, I don't think you'd remand any case for procedural unreasonableness. And again, we're talking about a five-year… No, so that's, I mean, but you do acknowledge that we do have, Blue doesn't mention, at least I just skimmed it, Blue doesn't mention harmless error at all one way or the other, right? So we can't rely on the failure of the government to raise an argument and the failure of the court to address an argument to preclude it. And in contrast, we do have a number of Fourth Circuit cases that do apply harmless error to procedural sentencing errors. You agree with that? I do. Okay. And so help me understand sort of specifically why you think, even though it does apply to this type of error, why do you think it is not applicable here? Not the broad brush strokes that it would always or never or whatever, but why specifically given the comments we do have from the judge, the information we do have from the judge, even if it maybe doesn't address the fact that he took a GED class, didn't get a GED but took a class, it doesn't address that fact, why wouldn't we look at that and say that only goes to whether he's getting out of the gang lifestyle. The court addressed that to some degree, maybe not adequately under Bleu, but we are very confident that the result would not change. And with Judge Wilkinson's permission, you, of course, answer. May I answer, Your Honor? Of course. Okay, thank you. Again, we would argue the judge did not consider the arguments. So to send it back, if the judge considers, i.e., thinks carefully about those arguments in the context of the reasons he had for going up, I don't see how this court can say that it's absolutely a slam dunk that he gets the same sentence. Maybe Judge Boyle upwardly departs four years or three years or two, you know, if he considers these arguments. Is the case of the United States vs. Berlin helpful to you? A case pretty similar to this one? I think they're all helpful, actually. I think this goes back to Rita, you know, that says a court has to set forth, you know, enough to show the court that it's considered the party's arguments. What in this record sets forth that the judge considered anything that Mr. Hines was saying about how he had taken steps to, you know, improve, you know, better himself? Again, I'm not saying he did a good job at it. All right, thank you, Mr. Wilkinson. Okay, thank you, Your Honor. We'll come down and agree to counsel and move into our final case.
judges: J. Harvie Wilkinson III, James A. Wynn Jr., Julius N. Richardson